UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARGOSY CAPITAL GROUP III, L.P.; SALEM
HALIFAX CAPITAL PARTNERS, L.P.; CORDAM
GROUP, LLC; FRAN DONATO; and FRANK
SEIDMAN,

                              Plaintiffs,

            – against –

TRIANGLE CAPITAL CORPORATION,

                              Defendant.

**OPINION AND ORDER**

17 Civ. 9845 (ER)

Ramos, D.J.:

The above-captioned parties are all lenders on a note made by CRS Reprocessing, LLC ("CRS"), a company headquartered in Louisville, Kentucky. In connection with the note, Plaintiffs appointed Defendant Triangle Capital Corporation ("Triangle") as their "Collateral Agent," pursuant to which Triangle was to perform any acts necessary to secure the collateral granted to Plaintiffs by CRS.

After CRS filed for bankruptcy in 2017, Triangle proposed to loan CRS money in exchange for a first-position lien in the collateral secured by Plaintiffs. Plaintiffs and several other CRS creditors objected repeatedly to this proposal. The bankruptcy court nevertheless approved Triangle's proposal.

Plaintiffs subsequently sued Triangle, claiming that it knowingly misrepresented CRS's financial status to them, breached its contractual duties as Collateral Agent, and engaged in tortious conduct to pursue its own financial interest at the expense of Plaintiffs'. Triangle now moves to transfer this action to the U.S. District for the Western District of Kentucky pursuant to 28 U.S.C. §§ 1404(a) and 1412. For the reasons that follow, Triangle's motion is GRANTED.

I. **BACKGROUND**[1]

Plaintiffs and Triangle (collectively, the "noteholders") are lenders on a loan made to CRS, evidenced by a "Second Amended and Restated Senior Secured Subordinated Note," dated February 10, 2015. Doc. 1 ¶ 9. In connection with that note, the noteholders entered into a security agreement with CRS ("Security Agreement"), pursuant to which CRS granted the noteholders a security interest in certain collateral, including all of CRS's "cash," "cash equivalents," and "accounts receivable" (collectively, CRS's "cash accounts"). *See id.* ¶¶ 10, 12; *see also* Doc. 1-1 at 2.

As part of the Security Agreement, the noteholders appointed Triangle as their "Collateral Agent." *Id.* In so doing, the noteholders granted Triangle a security interest in all their rights, title, and interest in CRS's cash accounts to secure the accounts—and, in the event of CRS's default, to execute thereupon—for the noteholders' benefit. Doc. 1 ¶¶ 11–15.; *see also* Doc. 1-1 at 1–2, 12–13, sched. 1. During this time, Triangle was also CRS's controlling shareholder, as well as an insider and senior creditor to the company. Doc. 1 ¶ 20.

Initially, the noteholders' security interest in CRS's cash accounts was subordinate only to that of THL Corporate Finance Inc. ("THL"), another CRS lender. Doc. 1 ¶ 18. However, on May 27, 2015, CRS, THL, and Triangle—acting both as an agent for Plaintiffs and on its own behalf as a lender to CRS—executed an agreement titled "Amended and Restated Intercreditor Agreement" ("Intercreditor Agreement"). Pursuant to the Intercreditor Agreement, the parties

---

[1] Unless otherwise noted, the following facts are drawn from Plaintiffs' complaint and accompanying exhibits, and they are assumed to be true for purposes of this motion. *See Tlpanco v. Elges*, 207 F. Supp. 3d 324, 326 n.2 (S.D.N.Y. 2016). In addition to Plaintiffs' complaint, the Court considers both the factual submissions submitted by Triangle, who has the burden to justify a transfer of venue, *see Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 737 n.1 (S.D.N.Y. 2013), and the record in the underlying bankruptcy proceeding, of which the Court takes judicial notice.

agreed that the noteholders' security interest in CRS's cash accounts would become senior in all respects to THL's interest. *Id.*; *see also* Doc. 14-1. [2]

On August 9, 2017, CRS filed a voluntary petition for relief in the U.S. Bankruptcy Court for the Western District of Kentucky (the "Bankruptcy Court"), pursuant to Chapter 11 of the United States Bankruptcy Code. *See In re CRS Reprocessing, LLC*, 17-32565-acs., Doc. 1 (Bankr. W.D. Ky. Aug. 9, 2017) ("Bankr. Doc. 1"). That same day, CRS filed an emergency debtor-in-possession[3] motion (the "DIP motion") in which it sought court authorization to obtain "post-petition superpriority financing" from Triangle, to be secured by, among other things, a "priming lien"[4] on CRS's cash accounts. *See* Bankr. Docs. 3, 8.

Several creditors, including Plaintiffs, objected to the DIP motion. *See, e.g.*, Bankr. Docs. 25, 36, 39, 58. [5] For example, some creditors, not including Plaintiffs herein, accused Triangle of scheming to acquire CRS's assets to the detriment of CRS's lienholders. *See, e.g.*, Bankr. Doc. 25 at 2 ("The DIP Motion is the first step in a brazen and transparent scheme by Triangle to acquire the Debtor's assets using Section 363 of the Bankruptcy Code."). Other creditors, like Plaintiffs, voiced concerns over the "inconsistencies" between CRS's pre- and post-petition financial disclosures. *See, e.g.*, Bankr. Doc. 81 ¶ 4. The creditors also expressed

---

[2] Plaintiffs did not attach the Intercreditor Agreement to their complaint. Instead, Plaintiffs attached the Agreement as an exhibit to a letter filed with the Court months later. *See* Doc. 14-1. Nevertheless, the Court concludes that the Intercreditor Agreement is incorporated by reference, and therefore considers it in adjudicating this motion, because Plaintiffs rely on the Agreement in their complaint both to justify venue and to support their substantive claims. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

[3] A debtor-in-possession is "[a] Chapter 11 or 12 debtor that continues to operate its business as a fiduciary to the bankruptcy estate." *Debtor-in-possession*, Black's Law Dictionary (10th ed. 2014).

[4] A prime or priming lien is "[a] lien that arises and attaches after another validly recorded lien in such a way that the lien has equal or superior rights in the same collateral." *Prime lien*, Black's Law Dictionary (10th ed. 2014).

[5] For reasons irrelevant to the disposition of this motion, Plaintiffs' initial objections to the DIP motion were made through Triangle acting solely in its capacity as Collateral Agent.

concern that CRS would be unable to meet its burden to provide "adequate protection"[6] to their security interest resulting from Triangle's potential priming lien on CRS's cash accounts. *See, e.g.*, Bankr. Docs. 25 ¶ 4, 81¶ 11. Furthermore, THL argued that the terms of the proposed DIP financing agreement violated the Intercreditor Agreement. *See* Bankr. Doc. 25 ¶¶ 15–16. And both THL and Plaintiffs objected to the DIP motion on grounds that CRS failed to show it was unable to obtain financing *without* the grant of a priming lien, as required by 11 U.S.C. § 364(d). *See* Bankr. Doc. 25 ¶ 6, 36 ¶¶ 12–13.

Because of these objections, CRS filed an amended DIP motion in which it sought to address some of the objections lodged against the initial DIP motion. *See* Bankr. Doc. 80. Plaintiffs and other creditors objected to this motion, too. *See, e.g.*, Bankr. Docs. 81, 82.

Notwithstanding the creditors' objections, on August 30, 2017, the Bankruptcy Court entered an interim order granting the DIP motion. *See* Bankr. Doc. 87. In so doing, the Bankruptcy Court found that "[CRS] ha[d] been unable to obtain financing from other sources other than from [Triangle as DIP Lender] on terms more favorable than those under the [DIP agreement with Triangle]." *Id.* at 3. The Bankruptcy Court concluded that the terms of the DIP financing agreement between CRS and Triangle were "fair, just, and reasonable under the circumstances;" reflected CRS's "exercise of prudent business judgment;" and were "negotiated in good faith and in an arm's length, open, and honest fashion in accordance with the Bankruptcy Code among [CRS] and [Triangle]." *Id.* at 4. The Bankruptcy Court then set a final hearing on the motion for September 12, 2017. *Id.* at 21.

---

[6] Pursuant to Section 364(d) of the Bankruptcy Code, "[t]he court, after notice and hearing, may authorize the obtaining of credit or the incurring of debt secured by senior or equal lien on property of the estate that is subject to a lien *only if . . . there is adequate protection of the interest of the holder of the lien* on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. § 364(d) (emphasis added).

4

The creditors objected to the entry of any final order for DIP financing. *See, e.g.*, Bankr. Docs. 153, 156, 159. Relevant here, Plaintiffs again objected on grounds the proposed DIP financing agreement provided for Triangle's use of CRS's cash accounts through the grant of a priming lien without providing adequate protection to Plaintiffs. *See* Bankr. Doc. 153 ¶¶ 2–3. Plaintiffs also objected on grounds that the proposed financing would "fund[] capital expenditures" benefitting Triangle—the likely future purchaser of CRS—to the detriment of Plaintiffs. *Id.* ¶ 6; *see also* Bankr. Doc. 159 ¶ 35.

On September 13, 2017, after several in-court hearings, the Bankruptcy Court entered a final order approving the DIP financing agreement between CRS and Triangle, which resulted in Triangle obtaining a priming lien over CRS's cash accounts. Bankr. Doc. 170. Soon after the entry of the final DIP order, CRS initiated a sale of substantially all its assets, including the cash accounts in which Plaintiffs held a second-priority security interest. Bankr. Doc. 180 ¶¶ 9, 12–14. Triangle, acting in its capacity as DIP lender, "credit bid"[7] on CRS's assets and was ultimately declared the successful bidder. *Id.* ¶ 16; *see also* Bankr. Doc. 235. Several parties, including Plaintiffs, objected to Triangle's proposed purchase of CRS's assets. Relevant here, Plaintiffs argued, *inter alia*, that Triangle's credit bid was inconsistent with the terms of the Security Agreement. *See* Bankr. Doc. 193 ¶¶ 13–16.

On November 6, 2017, the Bankruptcy Court approved the sale of CRS's assets to Triangle. *See* Bankr. Doc. 235. In so approving, the Bankruptcy Court found that the purchase was proposed, negotiated, and executed by CRS and Triangle "without collusion, in good faith,

---

[7] "Credit-bidding" is a process through which a creditor bids for property owned by its bankrupt debtor using the owed debt to offset the purchase price. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 642 (2012); *see also* 11 U.S.C. § 363(k) ("At a sale . . . of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.").

and from arm's length bargaining positions," and it concluded that neither CRS nor Triangle "engaged in any conduct that would cause or permit the Purchase Agreement or the consummation of the Transaction to be avoided," *id.*

On December 15, 2017, Plaintiffs filed the instant action against Triangle, asserting claims for (1) violation of § 10-b of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, (2) breach of the Security Agreement and the implied duty of good faith and fair dealing, (3) breach of fiduciary duty, (4) conversion, (5) fraud, and (6) negligent misrepresentation.[8]  Plaintiffs allege that their security interest in CRS's cash accounts has been rendered worthless as a result of Triangle's actions.  Doc. 1 ¶ 45.

As a jurisdictional matter, Plaintiffs assert that subject matter jurisdiction is present under 28 U.S.C. § 1331 and 15 U.S.C. § 78aa.  Plaintiffs also assert that venue is proper in this District given the presence of a forum-selection clause contained in the Intercreditor Agreement, signed by Plaintiffs and Triangle, which provides in relevant part:

> **ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST ANY PARTY ARISING OUT OF OR RELATING HERETO MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN EITHER (1) NEW YORK, NEW YORK OR (2) LOUISVILLE, KENTUCKY.**

Doc. 14-1 at 23.

On March 21, 2018, Triangle filed the instant motion, seeking a transfer of venue to the U.S. District Court for the Western District of Kentucky, the district in which CRS's bankruptcy petition was pending.  Doc. 20.

On June 12, 2018, the Bankruptcy Court dismissed the petition and closed the case due to CRS's failure to file a Chapter 11 Plan.  No party objected to dismissal.

---

[8] On February 7, 2018, Plaintiffs voluntarily dismissed the claim for breach of fiduciary duty.  *See* Doc. 10.

6

## II. DISCUSSION

### A. The Applicable Transfer of Venue Statute

The Court first must determine the statutory provision applicable to Triangle's motion to transfer. Triangle moves pursuant to both 28 U.S.C. §§ 1404(a) and 1412. In general, transfer-of-venue motions for "core" bankruptcy proceedings are governed by § 1412, which provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412; *see In re Iridium Operating LLC*, 285 B.R. 822, 835–36 (S.D.N.Y. 2002) (collecting cases). Transfer-of-venue motions for "non-core" bankruptcy proceedings, on the other hand, are governed by § 1404(a), which provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C § 1404(a).[9] Court-ordered transfers pursuant to either statutory provision are context-specific and discretionary. *See Brown Publ'g Co. v. Brown*, No. 15 Misc. 531 (JS) 2017 WL 455418, at *5 (E.D.N.Y. Feb. 1, 2017).

Here, whereas Triangle spends much of its moving papers explaining why, in its view, Plaintiffs' action constitutes a core proceeding, *see* Def.'s Mem. at 7, 13–14, 20–21, it nevertheless maintains that the Court need not decide whether Plaintiffs' claims are in fact core because "[c]ourts consider the same factors under both [§§ 1404(a) and 1412]," *id.* at 5. Plaintiffs, for their part, seem to agree—although they are somewhat equivocal on this point.

---

[9] More important than determining whether a district court should proceed under §§ 1404(a) or 1412, the distinction between core and non-core proceedings is paramount for determining the adjudicative powers of the bankruptcy court. "Put simply, if a matter is core, [28 U.S.C. § 157] empowers the bankruptcy judge to enter final judgment on the claim, subject to appellate review by the district court. If a matter is non-core, and the parties have not consented to final adjudication by the bankruptcy court, the bankruptcy judge must propose findings of fact and conclusions of law. Then, the district court must review the proceeding *de novo* and enter final judgment." *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014).

*Compare* Pls.' Mem. at 8 ("For its determination of the appropriate standard for transfer of venue, the Court *must* determine whether this instant action is a core proceeding or non-core proceeding." (emphasis added)), *with id.* n.1 ("The Court need not label this proceeding as either 'core' or 'non-core' to proceed with its transfer analysis.").

Notwithstanding the parties' representations, the Court proceeds to determine whether Plaintiffs' action is core/non-core for three reasons. First, the movant's burden of proof differs between § 1404(a) motions and § 1412 motions: With respect to § 1404(a) motions, "a court should not disturb a plaintiff's choice of forum unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice." *Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*, 487 B.R. 158, 166 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113–14 (2d Cir. 2010). With respect to § 1412 motions, however, "[t]he party moving for change of venue bears the burden of proof and that burden must be carried by a preponderance of the evidence." *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 306 B.R. 746, 749 (S.D.N.Y. 2004) (quoting *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1390–91 (2d Cir. 1990)).

Second, there exists between the two statutes a difference in the presumptive appropriate venue. Under § 1412, "the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy." *In re Manville*, 896 F.2d at 1391. No such presumption exists under § 1404(a).

Third, and particularly relevant here, "although there is a strong policy favoring the enforcement of forum[-]selection clauses in this Circuit, this policy is not so strong as to mandate that forum[-]selection clauses be adhered to where the dispute is core" to a bankruptcy

8

proceeding. *In re Iridium*, 285 B.R. at 836–37 (collecting cases); *see also Rescap Liquidating Trust v. PHH Mortg. Corp.*, 518 B.R. 259, 268 (S.D.N.Y. 2014) ("A number of courts in this District have held that when a proceeding is core, the public interest in centralizing bankruptcy proceedings always outweighs the public and private interests in enforcing a forum-selection clause, unless the core proceeding is inextricably intertwined with non-core matters. Other courts, within and outside this Circuit, have instead balanced the public interest in centralizing a particular core proceeding in a bankruptcy court against the parties' legitimate expectations and the interest of justice in enforcing a forum-selection clause.").

Because these three differences between §§ 1404(a) and 1412 may prove material to the question whether transfer of venue is appropriate here, the Court turns to the question whether Plaintiffs' action against Triangle is core/non-core.

### B. Whether Plaintiffs' Action is Core/Non-Core

"Although the term 'core proceeding' is not statutorily defined, section 157(b)(2) of the Bankruptcy Code sets forth a non-exhaustive list of such proceedings." *ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*, 565 B.R. 241, 249 (S.D.N.Y. 2017) (citing 28 U.S.C. § 157(b)(2)). In essence, a core proceeding is one "that involves 'substantive rights created by federal bankruptcy law' or that 'would have no existence outside of the bankruptcy.'" *Id.* at 248–49 (quoting *In re Robert Plan Corp.*, F.3d 594, 596–97 (2d Cir. 2015)). "Conversely, a claim is non-core if it 'does not depend on bankruptcy laws for its existence and . . . could proceed in a court that lacks federal bankruptcy jurisdiction." *Id.* (*DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 591 (S.D.N.Y. 2012)).

"Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, . . . or (2) the proceedings directly

9

affect a core bankruptcy function." *In re Extended Stay, Inc.*, 466 B.R. 188, 197 (S.D.N.Y. 2011) (quoting *In re Petrie Retail, Inc.*, 304 F.3d 223, 229 (2d Cir. 2002)). Furthermore, Section 157(b)(3) provides that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). And, finally, in determining whether the nature of the proceeding is core to a bankruptcy proceeding, the Court is mindful that "core proceedings should be given a broad interpretation that is close to or congruent with constitutional limits." *In re U.S. Lines, Inc.*, 197 F.3d 631, 636–37 (2d Cir. 1999) (internal quotation marks omitted).

In this case, Triangle presents three arguments why Plaintiffs' action affects core bankruptcy matters such that the entire proceeding is rendered core. Triangle's arguments can be summed up as follows:

1. Plaintiffs' conversion claim attacks the Bankruptcy Court's "orders approving the sale of property;"
2. Plaintiffs' claims for both breach of the Security Agreement and breach of the implied duty of good faith and fair dealing attacks the Bankruptcy Court's "orders in respect to obtaining credit," because Plaintiffs challenge Triangle's conduct in becoming DIP lender notwithstanding the Bankruptcy Court's repeated approval of Triangle as a good-faith DIP lender; and
3. All of Plaintiffs' claims affect "matters concerning the administration of [CRS's] estate" because the Security Agreement requires CRS to indemnify Triangle for claims arising thereunder.

*See* Def.'s Mem. at 13–14 (quoting 28 U.S.C. §§ 157(b)(2)(A), (D), and (N). The Court finds all three arguments well taken.

With respect to Plaintiffs' conversion claim, the Court concludes that such claim is plainly an attack on the Bankruptcy Court's "orders in respect to obtaining credit," 28 U.S.C. § 157(b)(2)(D), "determinations of the validity, extent, or priority of liens," *id.* § 157(b)(2)(K), and "orders approving the use or lease of property, including the use of cash collateral," *id.*

10

§ 157(b)(2)(N). To succeed on their conversion claim, Plaintiffs must prove that Triangle exercised "*unauthorized* dominion" over personal property in interference with Plaintiffs' legal title or superior right to possession. *LoPresti v. Terwilliger*, 126 F.3d 34, 42 (2d Cir. 1997) (emphasis added); *see also Thyroff v. Nationwide Mut. Ins. Co.*, 864 N.E.2d 1272, 1275–78 (N.Y. 2007). Success on this claim here would naturally conflict with several of the Bankruptcy Court's factual findings and legal conclusions to the contrary. Indeed, the Bankruptcy Court on several occasions found that Triangle engaged in honest, open, good faith conduct in acquiring the priming lien on CRS's cash accounts, even after Plaintiffs and others presented the Bankruptcy Court with the Security Agreement and Intercreditor Agreement. *See supra* Part I. Moreover, while the conversion claim sounds in state law, undoubtedly it involves substantive rights arising post-petition and created by federal bankruptcy law. Accordingly, this claim, at the very least, "directly affect[s] a core bankruptcy function," rendering it core. *In re Extended Stay, Inc.*, 466 B.R. at 197; *In re U.S. Lines, Inc.*, 197 F.3d at 637.

So too do Plaintiffs' claims for breach of the Security Agreement and the implied duty of good faith and fair dealing directly affect core proceedings—namely, the Bankruptcy Court's myriad orders in respect to CRS obtaining DIP financing from Triangle.

Finally, the Court concludes that Plaintiffs' claims directly affect core proceedings because they implicate the indemnity provision contained in the Security Agreement, which calls for CRS to indemnify Triangle for "any claim, suit, loss, liability, damage, or expense . . . resulting from or arising out of this Agreement, except for any such claims resulting from the negligence or willful misconduct of" Triangle. *See* Doc. 1-1 ¶ 17. This provision, if triggered, directly affects the administration of CRS's estate. 28 U.S.C. § 157(b)(2)(A) ("Core proceedings include, but are not limited to . . . matters concerning the administration of the

estate."). Tellingly, Plaintiffs do not dispute that the Security Agreement requires CRS to indemnify Triangle for at least *some* of the claims lodged against it. Rather, Plaintiffs argue that the potential for indemnification "is not enough" to make their claims even "related to" the bankruptcy proceeding, much less core. Pls.' Mem. at 13. The Court disagrees and finds ample support for its conclusion within the District. *See, e.g.*, *Weisman v. Se. Hotel Props. Ltd. P'ship*, No. 91 Civ. 6232 (MBM), 1992 WL 131080, at *3–4 (S.D.N.Y. June 1, 1992) ("[W]hen an indemnification clause or guaranty confers an absolute right to recover from a chapter 11 debtor, a judgment in the underlying suit will have a direct effect on the debtor's estate and, therefore, the underlying suit is related to the chapter 11 proceeding."). As stated aptly by another court in the District:

> Of course, a proceeding is not rendered core simply because it implicates property of a debtor's estate. . . . And where a matter represents only a tangential and speculative effect on the bankruptcy proceeding, it will not be considered core. However, the substantiality of the impact the matter or indemnification contract may have on other core bankruptcy functions may render the proceeding core.

*In re Ames Dep't Stores, Inc.*, No. 06 Civ 5394 (BSJ), 2008 WL 7542200, at *7 (S.D.N.Y. June 4, 2008). Here, the Court finds that the effect the Security Agreement's indemnification provision will have on CRS's estate upon success of Plaintiffs' action against Triangle is neither tangential nor speculative; rather, the plain text of the indemnification requires CRS to indemnify Triangle against at least some of Plaintiffs' claims—an effect that naturally renders the entire proceeding core. The few cases Plaintiffs cite in support of their argument to the contrary are either inapt or unpersuasive.

At base, Plaintiffs' action directly affects—and is directly affected by—the myriad factual findings, legal conclusions, and orders rendered by the Bankruptcy Court, rendering the

proceeding core. Accordingly, in evaluating Triangle's motion to transfer, the Court will proceed under 28 U.S.C. § 1412.

    C.    **Triangle's Motion to Transfer Pursuant to § 1412**

The Court now turns to the merits of this dispute—that is, whether Plaintiffs' action should be transferred to the U.S. District Court for the Western District of Kentucky.

Notwithstanding the differences in burden of proof and presumptions between the two provisions, *see supra* Part II.A., "[t]he same *factors* are considered by district courts in determining whether to grant a motion for transfer under [§] 1404(a) or 1412." *McHale v. Citibank, N.A.*, No. 09 Civ. 6064 (SAS), 2009 WL 2599749, at *5 (Aug. 24, 2009) (emphasis added). Courts in this Circuit consider several factors on a motion to transfer venue, including:

> (1) the plaintiff's choice of forum, (2) the convenience to witnesses, (3) the location of relevant documents and ease of access to sources of proof, (4) the convenience of parties to the suit, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, (9) trial efficiency, and (10) the interest of justice, based on the totality of the circumstances.

*Ritchie Cap. Mgmt., L.L.C. v. BMO Harris Bank, N.A.*, No. 14 Civ. 1936 ER, 2015 WL 1433320, at *7 (S.D.N.Y. Mar. 30, 2015) (citation omitted). Like § 1404(a), proper application of § 1412 "requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 59–60 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). However, as mentioned above, *see supra* Part II.A., one such "exceptional case[]" is where the action is core to a bankruptcy proceeding, in which case the policy toward enforcement of forum-selection clauses is "not so strong" as to mandate enforcement in the face of strong countervailing public interests in centralizing bankruptcy

proceedings, judicial economy, and overall justice. *In re Iridium*, 285 B.R. at 836–37; *see also Rescap Liquidating Tr.* 518 B.R. 259 at 268.

Here, Plaintiffs argue that this Court's transfer analysis should start and stop at the presence of the forum-selection clause found in the Intercreditor Agreement. Pls.' Mem. at 15.[10] Triangle, on the contrary, argues that the Intercreditor Agreement's forum-selection clause is inapplicable because Plaintiffs' claims arise out of the Security Agreement attached to their Complaint, not out of the Intercreditor Agreement

Assuming arguendo that the Intercreditor Agreement and its attendant forum-selection clause applies to this action, the Court nonetheless concludes that the strong relationship between Plaintiffs' action and core bankruptcy functions suffices to overcome the presumptive enforceability of the forum-selection clause. *See In re Iridium*, 285 B.R. at 836–37. Having spent almost a year adjudicating the blitz of objections by Plaintiffs and other creditors related to Triangle's financing to (and eventual acquisition of) CRS, the Bankruptcy Court simply is in a better position to adjudicate this action, as is the district in which Bankruptcy Court sits. Understandably, it is for this reason why courts presume that the appropriate venue to hear core proceedings is, in fact, the district in which the underlying bankruptcy action is pending. *See In re Manville*, 896 F.2d at 1391.[11] Indeed, "[i]t is not difficult to conclude that enforcing the forum[-]selection clause here would not serve the interests of justice. The palpable conflict

---

[10] The Court observes that venue is likely improper in this District absent the forum-selection clause, given that neither Triangle nor Plaintiffs nor CRS are residents of the District; a substantial part of the events or omissions giving rise to Plaintiffs' claims did not arise here; and no part of the property that is the subject of this action is situated in this District. *See* 28 U.S.C. § 1391.

[11] The Court notes that Plaintiffs, in their Sur-reply, argue that the Bankruptcy Court's dismissal of CRS's petition renders Triangle's motion to transfer venue moot. Doc. 27. Not so. As Triangle correctly observes, "a bankruptcy court 'plainly ha[s] jurisdiction to interpret and enforce its own prior orders,' even after a case is dismissed or closed." Def.'s Reply at 6 (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)). In any event, the Court reaches its decision to transfer irrespective of the applicability of *In re Manville*'s presumption.

between this action and the [b]ankruptcy [c]ase evokes a public interest sufficient to outweigh the forum[-] selection clause." *Credit Suisse AG v. Appaloosa Inv. Ltd. P'ship I*, 15 Civ. 3474 (SAS), 2015 WL 5257003, at *11 (S.D.N.Y. Sep. 9, 2015). Given this conclusion, the Court need not, and thus does not, decide whether the Intercreditor Agreement and the forum-selection clause included therein is applicable here.

In sum, Triangle has successfully met its burden to show that transfer is appropriate here pursuant to 28 U.S.C. § 1412.[12] Accordingly, its motion will be granted.

### III. CONCLUSION

For the reasons set forth above, Triangle's motion to transfer venue is GRANTED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 20, and to transfer this action to the U.S. District Court for the Western District of Kentucky with a recommendation that the action be referred to the Honorable Alan C. Stout, Bankruptcy Judge. This Opinion and Order closes the action in the U.S. District Court for the Southern District of New York.

It is SO ORDERED.

Dated: January 9, 2019
New York, New York

Edgardo Ramos, U.S.D.J.

---

[12] Although Triangle bore the burden to prove that transfer is appropriate by a preponderance of the evidence, the Court notes that it would have reached the same result even if the burden of proof was raised to that of clear and convincing evidence.